# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HENDERSON, ) | |
| Plaintiff ) | Civil Action No. 17-98 Erie |
| ) | |
| v. ) | |
| ) | Magistrate Judge Baxter |
| JOANNE BICKEL, et al., ) | |
| Defendants ) | |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

## I.    INTRODUCTION

### A.    Relevant Procedural and Factual History

Plaintiff Warren Henderson, a prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), initiated this civil rights action on April 25, 2017, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 [ECF No. 4]. Plaintiff subsequently filed a supplemental complaint on or about August 31, 2017 [ECF No. 40], which added further allegations against the original Defendants. Named as Defendants are the following individuals, all of whom were employed at SCI-Albion during the relevant time periods at issue: Librarian Assistant Joanne Bickel ("Bickel"); Kitchen Supervisors Linda Trout ("Trout") and Scott Breckenridge ("Breckenridge"); Grievance Coordinator Martucci ("Martucci"); Grievance Officers Giles ("Giles") and Kusiak ("Kusiak"); Corrections School Principal Cindy Clark ("Clark"); Superintendent Michael Clark ("Supt. Clark"); Chief Grievance Officer Dorina Varner ("Varner"); and Pennsylvania Department of Corrections Secretary Wetzel ("Wetzel").

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 14, 57].

1

In general, Plaintiff claims that Defendants have retaliated against him for exercising his constitutional rights and have discriminated against him based on his race in violation of the Fourteenth Amendment's equal protection clause. In particular, Plaintiff alleges that he was given a false misconduct for assaulting Defendant Bickel on March 28, 2016, and was sanctioned to 60 days of disciplinary custody, which was later reduced to 45 days. As a result of the misconduct and disciplinary sanction, Plaintiff claims that he was subsequently denied access to the law library on multiple occasions, and he lost his job in the kitchen. Plaintiff alleges further that Defendants Trout and Breckenridge violated his equal protection rights by not allowing him to get his kitchen job back after he was released from disciplinary custody, claiming that similarly situated white and Hispanic prisoners were commonly given their jobs back after serving disciplinary time. Plaintiff alleges that Defendants Martucci, Giles, Kusiak, C. Clark, M. Clark, Varner, and Wetzel, all participated in the complained of misconduct by denying Plaintiff's grievances regarding alleged retaliation and equal protection violations.

Defendants have filed a motion to dismiss complaint and supplemental complaint [ECF No. 35] arguing that Plaintiff has failed to allege the necessary personal involvement of Defendants Wetzel, Giles, Kusiak, Varner, Martucci, C. Clark, and M. Clark, in the alleged misconduct, and has failed to state claims upon which relief may be granted against Defendants Bickel, Trout, and Breckenridge. Plaintiff has since filed two identical responses in opposition to Defendants' motion [ECF Nos. 41, 45], as well as a document entitled "second Plaintiff's motion to amendment [sic] complaint and opposition to Defendants' motion to dismiss" [ECF No. 52], which is nothing more than a further response in opposition to Defendants' motion. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d

3

Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 2. *Pro se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with measure of tolerance"). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by

4

Abdul-Akbar v. McKelvie, 239 F.3d 307, 311 (3d Cir. 2001). Because Plaintiff is a *pro se* litigant, this court may consider facts and make inferences when appropriate.

### C. Discussion

#### 1. Personal Involvement

Defendants argue that Plaintiff has failed to establish the personal involvement of Defendants Wetzel, Giles, Kusiak, Varner, Martucci, C. Clark, and M. Clark, in any of the alleged constitutional violations and, thus, Plaintiff's claims against them should be dismissed. The Court agrees.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir.2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005), quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). See Ruff v. Health Care Adm'r, 441 F. App'x 843, 846 (3d Cir.2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct"). See also Kaucher v. County of Bucks, 455 F.3d 418, 432 n. 7 (3d Cir.2006), quoting Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir.2005) ("[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights").

Moreover, when a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise

or discipline so as to prevent such conduct." Id., quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). Moreover, it is well-settled that section 1983 liability cannot be predicated solely on the basis of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1972). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Here, all of the alleged conduct of Defendants Wetzel, Giles, Kusiak, Varner, Martucci, C. Clark, and M. Clark, occurred in connection with their participation in the prison grievance and/or misconduct process and, therefore, none of said Defendants was personally involved in the complained-of misconduct.[2] As a result, Plaintiff's claims against Defendants Wetzel, Giles, Kusiak, Varner, Martucci, C. Clark, and M. Clark will be dismissed.

### 2.    **Retaliation**

Prisoners alleging retaliation for exercising their First Amendment rights must show three elements: (1) the conduct leading to the retaliation was constitutionally protected; (2) the prisoner endured an adverse action by prison officials; and (3) the exercise of a constitutional right was a substantial or motivating factor in the alleged retaliatory action. Rauser v. Horn, 241 F.3d 330, 333–34 (3d Cir. 2001). If a prisoner shows the three retaliation elements, prison

---

[2] The Court notes that Plaintiff also makes the general allegations that Defendants C. Clark, Kusiak, M. Clark, and Wetzel "have blanket policies, customs and practices in place to deny plaintiff and other prisoners adequate law library time …" (ECF No. 4, Complaint, at ¶ 25), and that Defendants C. Clark, Giles, Kusiak, and Martucci "chose to use blanket policies to support [Defendants] Bickel's, Trout['s] and Brackenridge['s] retaliatory and racist actions towards the plaintiff" (Id. at ¶ 47) ; however, by lumping multiple Defendants together in an attempt to establish the existence of a "policy," the complaint fails to plausibly allege that any one of said Defendants was the final policymaker, as is required to establish personal involvement. See, e.g., Summers v. City of Philadelphia, 2017 WL 2734277, at * 9 (E.D.Pa. June 26, 2017), citing McTernan v. City of York, PA, 564 F.3d 636 (3d Cir. 2009).

officials "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

An adverse action is sufficient "'to deter a person of ordinary firmness from exercising his First Amendment rights.'" Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000), quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000). "'Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" Allah, 229 F.3d at 224 quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc). It "need not be great in order to be actionable" but must be "more than de minimus." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations and emphasis omitted).

To prove that a protected activity was a substantial or motivating factor in an alleged retaliatory action, a plaintiff must show "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016). "[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotation marks omitted) quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). When temporal proximity is not close enough to unduly suggest a retaliatory motive, the test is "timing plus other evidence." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).

### a. Defendant Bickel

Defendants seek dismissal of Plaintiff's retaliation claim against Defendant Bickel, arguing that Plaintiff has failed to show that he was engaged in a constitutionally protected

activity and, thus, cannot satisfy the first prong of a retaliation claim. In particular, Defendants assert that Plaintiff's claim arises from his receipt of a misconduct from Defendant Bickel, "which is not indicative of a 'constitutionally protected activity;'" however, this assertion overlooks Plaintiff's allegations that Defendant Bickel removed him from weekly law library callout in retaliation for grievances he filed against her on or about May 26, 2016. (ECF No. 4, Complaint, at ¶¶ 14-15, 21, 23, 25). Since it is beyond dispute that the filing of grievances is a constitutionally protected activity, the Court finds that Plaintiff has satisfied the first prong of his retaliation claim.

Defendants also argue that Plaintiff cannot support his claim that he was denied access to the law library because he was allotted the appropriate amount of law library time. In particular, Defendants contend that Plaintiff initially failed to specify that he required additional library time because he had a pressing court deadline, and that when he later claimed to have a court deadline "for [his] civil case," the docket in this case reflects that there were no deadlines missed. Although unclear, it appears that Defendants are attempting to demonstrate either that Plaintiff has failed to establish he was subject to an adverse action, or that Defendant Bickel would have made the same decision to deny Plaintiff law library time in the absence of Plaintiff's protected conduct, because Plaintiff failed to show he was entitled to additional library time due to a pressing court deadline. In either case, Defendants' argument is unavailing because Plaintiff's claim is not based solely on Defendant Bickel's denial of additional law library time that he allegedly required due to a pressing court deadline. In his original complaint, Plaintiff alleges that Defendant Bickel removed him from weekly law library callout and that "extra time was not [at] issue." (Id. at ¶¶21, 23). This alone is enough to establish adverse action and/or to

counter Defendants' argument that Defendant Bickel's alleged denial of library time was justified.

Based on the foregoing, therefore, Defendants' motion dismiss Plaintiff's retaliation claim against Defendant Bickel will be denied at this early stage of the proceeding.

### b. Defendants Trout and Breckenridge

Plaintiff appears to allege a vague claim of retaliation against Defendants Trout and Breckenridge arising from their refusal to give him his kitchen job back after he was released from serving his disciplinary time resulting from the misconduct he received from Defendant Bickel. In particular, Plaintiff alleges that said Defendants "both directly told [him] he was not getting his job in the kitchen back, based on his actions toward Defendant Bickel when he went to the (RHU) on 3-28-16." (ECF No. 4, Complaint, at ¶ 32). In other words, Plaintiff is essentially alleging that Defendants Trout and Breckenridge retaliated against him for assaulting Defendant Bickel; however, the act of assaulting a prison staff member is not constitutionally protected activity that would satisfy the first prong of a retaliation claim. For this reason, Plaintiff's retaliation claim against Defendants Trout and Breckenridge will be dismissed.

### 3. Equal Protection Claim

Plaintiff claims that Defendants Breckenridge and Trout discriminated against him on the basis of his race in violation of his Fourteenth Amendment right to equal protection when they refused to give him his kitchen job back after he was released from disciplinary custody. Specifically, Plaintiff alleges that all similarly situated White and Hispanic inmates were allowed to return to their jobs after serving disciplinary time for their "work and non-work related misconducts," while black prisoners, like himself, were not. (Id. at ¶¶ 30-31, 35, 71). Defendants

have moved to dismiss this claim, arguing that Plaintiff has failed to allege any facts to demonstrate purposeful discrimination.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir.1996), quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). See also United States v. Armstrong, 517 U.S. 456 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification. Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439. Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).

Moreover, to demonstrate an equal protection violation, an inmate has the burden of proving the existence of purposeful discrimination. Hernandez v. New York, 500 U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Official action does not violate the

Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 239 (1977); Stehney v. Perry, 101 F.3d 925, 938 (3d Cir.1996). Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. Hernandez, 500 U.S. at 360. An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision. McCleskey, 481 U.S. at 293.

Here, Plaintiff has alleged that "Defendants Trout and Breckenridge are known by black prisoners, White prisoners, and Hispanic prisoners, at Albion, for being racist towards black prisoners and has [sic] been heard calling black prisoners working inside Albion's kitchen Niggers!" (ECF No. 4, Complaint, at ¶ 31). Plaintiff alleges further that when he confronted Defendants Breckenridge and Trout with his claim that they were being racist and favored White and Hispanic prisoners over black prisoners, they responded, "you guys always trying to play the race card. What you guys need to do is follow the rules and know your place, then you don't have to worry about how the White and Spanish guys are treated differently from you. They know who's in charge inmate Henderson." (Id. at ¶ 36). Plaintiff has also submitted three affidavits from other inmates generally declaring that they have witnessed Defendants Breckenridge and Trout "treat black prisoners with racial discrimination and disrespect." (ECF No. 31-3, at pp. 4-5, 7). Although far from conclusive, these allegations are minimally sufficient to implicate purposeful discrimination at the pleading stage. Thus, Defendants' motion to dismiss Plaintiff's equal protection claim will be denied.

An appropriate Order follows.


                                            /s/ Susan Paradise Baxter
                                            SUSAN PARADISE BAXTER
                                            United States Magistrate Judge


Date:   February 2, 2018