IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1: 17-cv-0098 |
| | ) | |
| v. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | RICHARD A. LANZILLO |
| JOANNE BICKEL, ET AL. | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION ON |
| | ) | MOTION FOR SUMMARY JUDGMENT |

This is a pro se prisoner civil rights action, which is before the Court today on a Motion for Summary Judgment filed by the Plaintiff and a cross-motion for Summary Judgment filed by Defendants. ECF Nos. 77, 83. For the reasons that follow, the Defendants' motion [ECF No. 83] will be GRANTED. The Plaintiff's motion [ECF No. 77] will be DENIED.[1]

I. Background

Plaintiff Warren Henderson ("Plaintiff" or "Henderson"), a prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), initiated this civil rights action on April 25, 2017, by filing a pro se complaint pursuant to 42 U.S.C. § 1983 [ECF No. 4]. Plaintiff subsequently filed a supplemental complaint on or about August 31, 2017 [ECF No. 40], which added further allegations against the initial Defendants. Originally named as Defendants were the following individuals, all of whom were employed at SCI-Albion during the relevant time periods at issue: Librarian Assistant Joanne Bickel ("Bickel"); Kitchen Supervisors Linda Traut ("Traut") and Scott Breckenridge ("Breckenridge"); Grievance Coordinator Martucci ("Martucci"); Grievance Officers Giles ("Giles") and Kusiak ("Kusiak"); Corrections School Principal Cindy Clark ("Clark"); Superintendent Michael Clark ("Supt. Clark"); Chief

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. *See* ECF Nos. 14, 57.

1

Grievance Officer Dorina Varner ("Varner"); and Pennsylvania Department of Corrections Secretary Wetzel ("Wetzel").

Plaintiff claims that Defendants have retaliated against him for exercising his constitutional rights and have discriminated against him based on his race in violation of the Fourteenth Amendment's Equal Protection Clause. Specifically, Henderson alleges that he was given a false misconduct for assaulting Defendant Bickel on March 28, 2016, and was sanctioned to 60 days of disciplinary custody, which was later reduced to 45 days. As a result of the misconduct and disciplinary sanction, Plaintiff claims that he was denied access to the law library on multiple occasions, and he lost his job in the kitchen. Plaintiff alleges further that Defendants Traut and Breckenridge violated his equal protection rights by not allowing him to return to his kitchen job after he was released from disciplinary custody, claiming that similarly situated white and Hispanic prisoners were commonly given their jobs back after serving disciplinary time. Further, Plaintiff alleged that Defendants Martucci, Giles, Kusiak, C. Clark, M. Clark, Varner, and Wetzel all participated in the complained of misconduct by denying his grievances regarding alleged retaliation and equal protection violations.

Defendants filed a motion to dismiss the complaint and supplemental complaint [ECF No. 35] in which they argued that Henderson failed to allege the necessary personal involvement of Defendants Wetzel, Giles, Kusiak, Varner, Martucci, C. Clark, and M. Clark in the alleged misconduct, and failed to state claims upon which relief may be granted against Defendants Bickel, Traut, and Breckenridge. Plaintiff filed two identical responses in opposition to Defendants' motion [ECF Nos. 41, 45], as well as a document entitled "second Plaintiff's motion to amendment [sic] complaint and opposition to Defendants' motion to dismiss" [ECF No. 52], which is nothing more than a further response in opposition to Defendants' motion. The Court

granted the Defendants' motion, in part, and dismissed Henderson's claims against Defendants Wetzel, Giles, Kusiak, Varner, Martucci, C. Clark, and M. Clark. *See* ECF No. 61.

Remaining in this litigation are claims of retaliation against Defendant Bickel and denial of equal protection against Defendants Breckinridge and Traut. Both the Plaintiff and the remaining Defendants have filed motions for summary judgment. *See* ECF Nos. 77, 83. Defendants have also filed a brief in support of their motion (ECF No. 84) and a Concise Statement of Material Facts (ECF No. 86). Plaintiff was permitted to supplement his motion for summary judgment (ECF No. 82). He has also filed numerous notices purporting to update the Court on various factual developments. *See* ECF Nos. 88. 89. 90, 91, 92, 93, 94, 96, 97, and 98. Henderson has not filed a Concise Statement of Material Facts.[2] This case was reassigned to the undersigned on September 24, 2018 and the pending motions for summary judgment are now ripe for disposition. *See* ECF No. 95.

II. Summary Judgment Standard

The standards by which a court grants or denies each party summary judgment do not change by virtue of cross-motions being presented. *Porter v. Pa. Dept. of Corr.*, 2018 WL 5846747 at *6 (W.D. Pa. Nov. 8, 2018) (citing *Home for Crippled Children v. Prudential Insurance Co.*, 590 F. Supp. 1490, 1495 (W.D. Pa. 1984)). "On cross-motions for summary judgment, the law in our Circuit is clear—the Court considers each Motion on its own merits,

---

[2] Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections*, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

tested against the standards of [Federal Rule of Civil Procedure 56]." *U.S. Equal Employment Opportunity Comm'n v. Bob Evans Farms, LLC*, 275 F. Supp. 3d 635, 639 (W.D. Pa. 2017) (internal citations omitted). As the Court of Appeals for the Third Circuit explained, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating

that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

IV.  Discussion

    A.  Retaliation Claim against Defendant Bickel

Henderson's retaliation claim against Defendant Bickel was permitted to proceed to this stage of litigation because he adequately pleaded that he engaged in a constitutionally protected activity (the filing of a grievance) and that Bickel retaliated against him for it (by denying him access to the prison law library). ECF No. 61 at 8. But now, Henderson "must point to some evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing Fed. R. Civ. P. 56(e)). "In this respect, summary judgment is essentially 'put up or shut up' time for [Henderson]: [he] must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Id.* (citing *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). "If, after adequate time for discovery, [Henderson] has not met [his] burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against [him]." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 637, 643 (3d Cir. 2015) (citation omitted).

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the United States Constitution, which is actionable under Section 1983. *Rauser v. Horn*, 341 F.3d 330 (3d Cir. 2001); *White v. Napoleon*, 897 F.2d 103, 112 (3d Cir. 1990). The mere allegation of retaliation, however, is insufficient to establish such a claim. In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"

at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. *Rauser*, 241 F.3d at 333 (adopting *Mount Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The crucial third element, causation, requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997)). Once a plaintiff has made his prima facie case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Rauser*, 241 F.3d at 334 (incorporating *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Verbanik v. Harlow*, 2012 WL 4378198 (W.D. Pa. Sept.25, 2012).

Defendant Bickel argues she is entitled to summary judgment because Henderson has not brought forward any evidence showing he suffered an "adverse action," which is defined as an action "sufficient to deter a person of ordinary firmness from exercising his rights." *Verbanik v. Harlow*, No. 09–448, 2012 WL 4378198 (W.D. Pa. Sept.25, 2012) (quoting *Bailey v. Lawler*, 2010 WL 5018825 (M.D. Pa. Aug.11, 2010)). The Court agrees.

Henderson complains of two instances of perceived retaliation. First, he argues that he was removed from the "call-out" list, thereby prohibiting his access to the law library after filing grievances against Bickel. Evidence in the summary judgment record reveals the opposite, however: Henderson was listed on the "call-out" list for the law library numerous times after he submitted his grievances. *See* ECF No. 85-1. Henderson filed his grievance against Bickel on May 26, 2016. ECF No. 4, at 7 ¶ 13. But Henderson appears on the list for library call-out on

dates after he filed his grievance: May 31, 2016 (from 9:00 am until 10:45 am), June 7, 2016 (from 9:00 am until 10:45 am), and on June 14, 2016 (from 9:00 am until 10:45 am). *Id*. at 1-4. Henderson has not brought forward any evidence contradicting or refuting these instances of library access. Therefore, the Court agrees with Defendant Bickel that Henderson has not shown that he suffered an adverse action after filing a grievance against her. Accordingly, Bickel is entitled to summary judgment on Henderson's retaliation claim against her.

This Court previously noted that Henderson's retaliation claim "is not based solely on Defendant Bickel's denial of additional law library time that he allegedly required due a pressing court deadline," and he acknowledged in his Complaint that "extra time was not [at] issue." ECF No. 61 at 8 (citing ECF No. 4, at ¶¶ 21, 23). However, Henderson's Motion for Summary Judgment continues to reference his denial of additional library time because of a court deadline. *See* ECF No. 77, at 9, ¶ 20 (". . . staff members called and told Bickel that he had a deadline."). So then, to the extent Henderson continues to argue that Defendant Bickel retaliated against him by denying him additional library time, the Court finds that Bickel is also entitled to summary judgment. *See* ECF No. 85-2, at 1. The Defendant states that Henderson was not entitled to additional time, per prison policy, because he did not have a pending court deadline. *See* ECF No. 84, at 4 (citing DC-ADM § 1(D). The Court agrees. Nothing in the record establishes that Henderson did indeed have a looming court date or deadline for filing that would have necessitated his need for additional library time. Henderson has not provided any documents, docket report, or other evidence establishing a court ordered deadline in a particular case. And, as Defendant Bickel points, out, Henderson was given additional library time above and beyond what he was entitled to on June 9, 2016 and June 17, 2016. *See* ECF No. 85-5, at 1-2. Henderson has not brought forward any evidence to contradict Bickel's evidence.

7

As noted above, Henderson has asserted that three members of the prison staff—Correctional Officers Hall, Steele, and Matlock—told Defendant Bickel that he "had a deadline in his legal case," yet Bickel denied Henderson law library access. ECF No. 77 at 4, 9. These are allegations however, lacking any appropriate evidentiary support. Henderson, as the party opposing summary judgment, "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). He has not done so here.

B. Equal Protection Claim against Defendants Breckenridge and Traut

In violation of the Fourteenth Amendment, Henderson claims that Defendants Breckenridge and Traut discriminated against him because of his race (Henderson is African American) by denying him employment in the prison kitchen after he was released from disciplinary custody. *See, e.g.*, ECF No. 4, at 7-8, ¶¶ 18-19. The basis for his claim is Henderson's belief that White and Hispanic prisoners were allowed to return to their jobs after being in disciplinary confinement while African American prisoners were not. *Id*. at 10, ¶ 30-31, 11, ¶ 35, 18, ¶ 71. This claim survived the Defendants' Motion to Dismiss because it was

minimally sufficient, at the pleading stage, to implicate purposeful discrimination based on three affidavits Henderson filed in which other inmates declared they witnessed racial disrespect and discrimination. ECF No. 61 at 11.

At the outset, the Court agrees with the Defendants that Henderson has no constitutionally protectable interest in a particular prison employment position, namely in the prison kitchen. *See James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989) (recognizing that inmates have no constitutional right to be assigned to a particular job; an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the Fourteenth Amendment); *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); *see also Fidtler v. Pa. Dept. of Corrections*, 55 Fed. Appx. 33, 35 (3d Cir. 2002) ("[W]e have held that a state inmate does not have a liberty or property interest in prison employment"). Consequently, Henderson has no Fourteenth Amendment due process right to his job in the prison's kitchen.

However, racial discrimination in prisons is unconstitutional under the Fourteenth Amendment, except for "the necessities of prison security and discipline." *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (per curiam). While the Due Process Clause of the Fourteenth Amendment does not create a property or liberty interest in prison employment, racial discrimination in the assignment of jobs may violate equal protection. *See, e.g., Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004). The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235,

9

1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). This Court has previously stated:

> [T]o demonstrate an equal protection violation, an inmate has the burden of proving the existence of purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352 (1991); *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Official action does not violate the Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Stehney v. Perry*, 101 F.3d 925, 938 (3d Cir. 1996). Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. *Hernandez*, 500 U.S. at 360. An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision. *McCleskey,* 481 U.S. at 293.

*Walker v. Campbell*, 2011 WL 6153104, at *9 (W.D. Pa. Oct. 31, 2011), *report and recommendation adopted*, 2011 WL 6176808 (W.D. Pa. Dec. 9, 2011).

In an attempt to show that "unlawful considerations [of race] played a part" in denying him a position in the prison's kitchen after he was released from disciplinary custody, Henderson points to the declarations of two inmates he filed as a supplement to his Motion for Summary Judgment as support for his contention that Hispanic and white inmates routinely receive employment positions in the prison after they complete disciplinary custody while African American inmates in the same situation do not. ECF No. 81-1, at 1-2. Authored by inmates Báez and Thorpe, these declarations state they were given jobs as a block worker (Báez) and an inside laborer (Thorpe). ECF No. 81-1, at 1-2. Neither of these positions are in the prison kitchen. Missing from these declarations, however, is any indication of the race of these inmates and their disciplinary history. The Defendants have filled-in these gaps, however. Documentary

10

evidence, including a photograph of Inmate Thorpe, indisputably reveals that he is African American. ECF No. 85-6 at 1. And, Inmate Báez has a clear record when it comes to disciplinary actions. ECF No. 85-7. Neither of these declarations, therefore, advance Henderson's claims that similarly situated Hispanic and White inmates received kitchen positions post-disciplinary custody while African American inmates did not. Thus, Henderson has not brought forward evidence from which a reasonable jury could conclude that the Defendants treated him differently because of his race.[3]

Henderson's supplemental filing contains additional evidence which cuts against his discrimination claim. The Court observes that Henderson has filed ten "Inmate Request to Staff Member" forms inquiring into securing an employment position within the prison. ECF No. 81-1, at 3-12. On these forms, Henderson asks for staff assistance in obtaining employment within the prison. The staff responses, however, reveal that Henderson was only "interested in maintenance jobs," and that he was not approved for such a position by prison security. *Id*. at 3, 5, 7. For example, one staff member responded to Henderson's request by stating "I spoke with security about your request for maintenance jobs. You are not approved." *Id*. at 3. Another staff person responded to Henderson reminding him that "as previously addressed, you only asked for jobs in maintenance. Security denied this." *Id*. at 7. And notably, record evidence shows that

---

[3] When considering the Defendants' Motion to Dismiss [ECF No. 35], this Court noted the existence in the record of affidavits from other inmates which generally declare they have witnessed Defendants Breckenridge and Traut "treat black prisoners with racial discrimination and disrespect." ECF No. 84 at 9 (quoting ECF No. 31-3, at 4-5, 7). These affidavits all relate the same information: "About the third week of March 2016 myself and for [sic] other inmates were standing on line 2 when Mr. Breckenridge of dietary came in the area and states, what are all you niggers standing around eating for, when you should be working. We stated that all of our work is done. He in turn stated that we should find something to do. We just hurried up and ate our food and left the line area. This was done a couple other times. I reported this to Miss Trout [sic], who in turn stated that she would look into this matter, but nothing was ever done about this incident or any of the others." ECF No. 31-3 at 3. These affidavits have no bearing on Henderson's claim of racial discrimination beyond what the Court has already noted: that they are general declarations of racial disrespect. Importantly, these affidavits do not state the affiants were denied employment in the prison kitchen because of their race. Consequently, although these affidavits were barely sufficient to save Henderson's equal protection claim from dismissal under Fed. R. Civ. P. 12, they are irrelevant for purposes of summary judgment.

Henderson was told by prison authorities that his disciplinary history was preventing him from obtaining a position in the maintenance department. ECF No. 85-8, at 1. Because the summary judgment record contains no evidence of a discriminatory intent or purpose, and therefore no evidence of racial discrimination in prisoner employment, the Court will grant summary judgment to Defendants Breckenridge and Traut on Henderson's Equal Protection claim.

      C.      Plaintiff Henderson's Motion for Summary Judgment

As the Court noted at the outset, Henderson filed a Motion for Summary Judgment. ECF No. 77. He did not file a memorandum in support of his motion or a Concise Statement of Material Facts. He has filed, however, fourteen notices and letters with the Court, purporting to be updates on the continued retaliation and discriminatory actions leveled against him. ECF Nos. 78, 80, 87, 88, 89, 90, 91, 92, 93, 94, 96, 97, 98, 99. Given the lenient standards we use when reviewing pro se filings and to the extent possible, the Court will consider these filings as supporting evidence for Henderson's motion. That is not possible, however, in many instances because the documents do not relate to the claims being litigated in this matter. The following is a breakdown of the filings docketed after Henderson filed his summary judgment motion.

| ECF Number | Date Filed | Contents |
| --- | --- | --- |
| 78 | May 1, 2018 | Update to Court regarding a malfunction of a machine in the prison commissary, which Henderson attributes to retaliation for his filing of grievances |
| 79 | May 1, 2018 | Copy of a grievance form Henderson filed regarding his inability to use the prison commissary |
| 80 | May 24, 2018 | Relating alleged retaliation by prison guards stemming from the manner in which they searched Henderson's cell |

| 87 | July 2, 2018 | Informing Court that his mail is being tampered with as retaliation and that he has filed a grievance |
| 88 | July 9, 2018 | Informing Court that Henderson requested a video of the incident involving Defendant Bickel and that his request was denied |
| 89 | July 10, 2018 | Informing Court of filing a grievance regarding a strip search imposed on Henderson |
| 90 | July 16, 2018 | Filing appears to dispute Defendants' documentary evidence ("defendants sent documents that don't have anything to do with the facts of the defendants retaliated against Plaintiff."); filing also challenges the sufficiency of the Defendants' evidence in refuting Henderson's claims of equal protection |
| 91 | July 16, 2018 | Repetitive filing of ECF No. 87 |
| 92 | July 20, 2018 | Disputing Defendants' Concise Statement of Material Fact regarding Báez and Thorpe's employment. Henderson appears to argue that he was not raising a racial discrimination in employment claim, but instead that he was denied employment as retaliation for filing a grievance |
| 93 | August 29, 2018 | Relating that Henderson remains without a job, that his typewriter has not been returned, and that his cell continues to be searched |
| 94 | September 7, 2018 | Same filing as ECF No. 93 |
| 96 | October 18, 2018 | Informing Court that Henderson was retaliated against by being searched |

| | | before and after participating in a prison charity event |
|---|---|---|
| 97 | November 15, 2018 | Repeat filing of ECF No. 96 because his mail was stolen the first time he attempted to send ECF No. 96 to the Court (does not explain how ECF No. 96 was filed if it had been stolen from him) |
| 98 | November 29, 2018 | Informing Court that pages from Henderson's Bible had been "carefully torn out." ECF No. 98 at 2 |
| 99 | December 7, 2018 | Update on "relentless retaliation" without any other information |

Of these documents, the Court will only consider ECF No. 92 because it specifically references the Defendants' Concise Statement of Material Facts and appears to challenge some of their statements. The remaining filings are either irrelevant to this action or raise new claims that are outside the scope of this litigation.[4]

In ECF No. 92, identified as a "Motion Letter to Support Plaintiff's Summary Judgment," Henderson argues that he is not raising a discrimination in employment claim but instead that the Defendants' refusal to give him a job in the kitchen was retaliation for filing a grievance against Bickel. *See* ECF No. 92 at 2 ("They know Plaintiff was/is denied employment as retaliation."). But Henderson is wrong. He does indeed challenge his continued denial of employment as racial discrimination. In his Complaint, Henderson alleges that "Defendants Breckenridge and Trout [sic] are known by black prisoners, white prisoners and Hispanic prisoners at Albion for being racist towards black prisoners," and that these two Defendants "chose to act racist and repunished plaintiff and deny plaintiff equal protection of the law … white and Hispanic inmates

---

[4] These additional, unrelated claims, if Henderson chooses to pursue them, should be filed in separate lawsuits. *See, e.g., Everett v. Pierce*, 2016 WL 6956426 at *2 (W.D. Pa. Nov. 29, 2016).

who lost their jobs for disciplinary infractions and served RHU disciplinary punishment for work and nonwork issue, and received their jobs back." ECF No. 4, at 10, ¶¶ 30-31. Further, the Complaint states that Henderson charged Defendant Traut with being a "racist," and claimed that "the Spanish prisoners and white prisoners go to the RHU for work related and non-work related rule violations and they are let back into the kitchen to work." *Id*. at 11, ¶ 35. Finally, under the heading "Fourteenth Amendment Violation Racial Discrimination," Henderson charges Defendants Breckenridge and Bickel with acting "racists [sic], biased and discriminatory ... by denying him right to be treated equally as all the Spanish and white prisoners similarly situated and housed with him who received work and nonwork related misconducts and allowed to return back to their jobs because they were Spanish and white and not black." *Id*. at 18-19, ¶ 71. Simply put, Henderson cannot change the nature of his claim in response to the Defendants' Concise Statement of Material Facts. He has raised an equal protection claim based on racial discrimination in employment and his charges have been analyzed as such.

In short, Henderson has not brought forward any evidence which would create a genuine issue of material fact as to his retaliation or equal protection claim. Thus, his Motion for Summary Judgment will be DENIED.

V. Conclusion

Defendant Bickel will be GRANTED summary judgment on Henderson's retaliation claim. Defendants Breckenridge and Traut will be GRANTED summary judgment on Henderson's equal protection claim. The Defendants' Motion for Summary Judgment [ECF No. 83] will be GRANTED. Plaintiff Henderson's Motion for Summary Judgment [ECF No. 77] will be DENIED. Final judgment will be entered in favor of the Defendants and against Plaintiff

Henderson by separate Order in accordance with Rule 58 of the Federal Rules of Civil Procedure.

An appropriate order will follow.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of December, 2018.